## In re JOSEPH.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

ATTORNEY AND CLIENT (§ 42*)—DISBARMENT OF ATTORNEY.

An attorney acting for a client who had lent money to a firm, when he learned that bankruptcy proceedings were inevitable, obtained control of the merchandise belonging to the firm, in fraud of the creditors, and secured for his client a preference in violation of the bankruptcy law, by a bill of sale of the goods from one of the partners under which he secreted the goods so that the trustee in bankruptcy could not follow them,. and, to cover up his actions, was guilty of perjury and subornation of perjury on a hearing before a special commissioner, and also testified falsely before the referee in proceedings to disbar him. *Held*, that he was guilty of unprofessional conduct, warranting disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54;. Dec. Dig. § 42.*]

Proceedings to disbar Abraham A. Joseph, an attorney. Application granted.

See, also, 125 App. Div. 544, 109 N. Y. Supp. 1018; 125 App. Div. 941, 109 N. Y. Supp. 1134.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and CLARKE, JJ.

Abram I. Elkus, for petitioner.
Abraham A. Joseph, in pro. per.

PER CURIAM. The association of the bar of the city of New York presented charges against the respondent which were referred to a referee who has submitted his report. The referee in a very careful report has stated the evidence taken before him in relation to these charges, but a short statement of the facts as proved before the referee will be necessary in determining this proceeding.

In January, 1904, the respondent seems to have been acting for one Rosie Korn, wife of Tobias Korn, who made a loan to the firm of Gilroy & Bloomfield; the respondent advising as to the method of securing that loan. He recommended an assignment of certain outstanding accounts which he drew and which were executed by the parties. This transaction was in January, 1904, and it subsequently appeared that some of these accounts had already been assigned to banks or others as security, and that some of them were fictitious,. Joseph, however, advised Tobias Korn, who acted for his wife, to remain quiet, but to have assignments made of new accounts, and

in that manner reduce the indebtedness, and this advice was followed and the indebtedness reduced to about $5,600. One Feinman, as a friend of the Korns, entered into the employ of Gilroy & Bloomfield. In March Feinman had a quarrel with Bloomfield and Gilroy, and on the evening of March 10th Tobias Korn called on the respondent. Gilroy wished to secure Mrs. Korn for the balance due her, and respondent prepared a bill of sale from Gilroy & Bloomfield to Mrs. Korn, which as finally produced by respondent, purported to transfer the entire stock of merchandise in possession of the firm. This was signed in the firm name of Gilroy. There was a question as to whether this bill of sale was not subsequent to its execution altered by the respondent so as to include other goods than those originally transferred. On the next morning, March 12th, the respondent was early in consultation with Korn and Gilroy and was informed that creditors were moving against the firm and that Bloomfield had commenced an action for a dissolution of the partnership and had served the summons and complaint with a notice of motion for the appointment of a receiver. The papers in this action were delivered to the respondent. The respondent, fearing a petition in bankruptcy, sent his clerk to the United States District Court to see if one was filed. None having been filed, respondent instructed Korn to go ahead and remove the merchandise under this bill of sale. Joseph recommended that these goods be sent to one Altachul, who is what is called a "sponger," and on the same day this merchandise was taken away and delivered to the sponger.

On Monday, March 21, 1904, a petition in bankruptcy was filed in the United States District Court and an order was made appointing a receiver. When the receiver reached the place of business of this firm about 11 o'clock Monday morning, he found that substantially all the merchandise had disappeared whereupon proceedings were taken to examine the parties to the bankruptcy proceedings including the respondent before a special commissioner, and the parties on this examination apparently successfully concealed the disposition that had been made of this merchandise. In the meantime, on an order signed by Gilroy, one of the partners, the sponger had delivered the goods to an unknown and unidentified truckman, with whom was a person who appeared to be a clerk, who has also been unidentified. There is evidence that the respondent procured this order from Gilroy, and that he thereby secured the possession of this property. Subsequently an action was brought by the trustee in bankruptcy against Gilroy and the respondent to recover the sum of $5,750 for money and the value of merchandise alleged to belong to the bankrupt estate and to have been transferred to respondent. This action was tried in the United States Circuit Court and resulted in a judgment against the defendant Gilroy and the respondent Joseph, for the sum of $3,250, with interest and costs. While this action was pending, proceedings were instituted in the United States District Court to disbar the respondent which resulted in an order striking his name from the roll of attorneys in that court, and a similar order was made by the United States Circuit Court. Upon the demand of the respondent he was allowed in this proceeding to retry the question determined by

this judgment and the orders disbarring him before the referee, and the evidence is now before us.

The case has been treated by the referee as though this was an original proceeding in which the questions in relation to these charges had not been before determined, and for the purpose of determining this application such evidence will be so considered. We will not attempt to restate the testimony. We are convinced that the respondent, as soon as he ascertained that this firm was unable to go on with its business, and that bankruptcy proceedings were inevitable, obtained control of substantially all the merchandise belonging to the insolvent firm in fraud of the creditors and to secure for one creditor a preference in violation of the bankrupt law. To accomplish this he resorted to means which were entirely unjustifiable and succeeded in causing this property to disappear so that it was lost to the creditors of the firm. To cover up this action he was guilty of perjury and subornation of perjury, and on the hearing before the referee he renewed his offense by testifying falsely in many particulars. It is no excuse for the respondent that the advice to obtain this merchandise so as to create a preference in violation of the bankrupt law would not of itself be serious professional misconduct; but such advice, followed up by the disposition of the merchandise so that it actually disappears without leaving any trace by which the trustee in bankruptcy could follow it, thus placing it out of the power of the trustee to raise the question as to whether the merchandise should go to the general creditors or be retained by the preferred creditor, is certainly not such conduct as will meet with the approval of this court. The property of this bankrupt firm belonged to its creditors, of which fact the respondent must be assumed to have had knowledge. It was certainly no part of his professional obligation to his client to take part in a scheme to so dispose of the property of the bankrupt firm as to put it out of the power of the trustee in bankruptcy to recover the property applicable to the claims of its creditors. The respondent was examined as a witness in the proceedings in bankruptcy against the insolvent firm. It is apparent from the evidence that he gave the advice and conducted the proceedings in relation to the disposition of this property for the express purpose of making it impossible for the trustee in bankruptcy to secure the property for the benefit of the creditors. His whole conduct in relation to it was a violation of his professional obligations, and no devotion to the interests of his client can justify him in advising and engineering such a scheme.

There is also the charge that the respondent materially altered the bill of sale from Gilroy to Mrs. Korn after it was executed, and by virtue of this altered instrument succeeded in getting into his possession a large amount of merchandise for which he has failed to account. The referee has characterized the testimony upon which this charge is sought to be sustained as unsatisfactory, and, as is generally the case, those who enter into such a scheme are not of a character that makes their testimony reliable; but the respondent voluntarily connected himself with these people and quite clearly joined with them in an attempt to defraud the creditors of this bankrupt

firm. The fact that the respondent, having in his possession this bill of sale which he here seeks to justify, did not produce it for months after the receiver in bankruptcy had been appointed, although there had been various proceedings in the bankruptcy court to discover the whereabouts of this property of the bankrupts or to account for its disposition; the fact that he certainly had knowledge of the removal of all this merchandise from the bankrupt's place of business to the sponger's; and having engineered the scheme to this extent—it is hardly supposable that he had no knowledge of the subsequent disposition of the property. The respondent's explanation of all of these transactions is most unsatisfactory.

In addition to this, the referee has found, upon testimony which clearly sustains the finding, that the respondent deliberately testified falsely when he was examined before Commissioner Alexander on March 24, 1904. The respondent does not dispute that some of his testimony before the commissioner was false, but seeks to excuse it; but no one can read the testimony given by the respondent before this commissioner and read his own testimony given upon this examination before the referee without being satisfied that the respondent deliberately testified falsely to hide the disposition of the money and property of the bankrupt firm, and that his whole object in that examination was to conceal this disposition of the merchandise, instead of making a frank disclosure of the facts in relation to it. Thus we think this testimony conclusively convicts the respondent of fraud and perjury and requires that he should be disbarred.

The application is therefore granted.